CHARLES J. KELLY AND DEBORAH A. KELLY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Kelly v. Commissioner
Docket No. 17679-81.
United States Tax Court
T.C. Memo 1983-569; 1983 Tax Ct. Memo LEXIS 220; 46 T.C.M. (CCH) 1391; T.C.M. (RIA) 83569; September 14, 1983. *220 Held, petition dismissed for failure properly to prosecute under Rule 123(b) and summary judgment granted as to addition to tax under sec. 6653(b), I.R.C. 1954, based upon deemed admissions. Deborah Kelly, pro se. Edward F. Peduzzi, Jr., for the respondent. WHITAKER
MEMORANDUM OPINION WHITAKER, Judge: This case is before us on respondent's motions for partial summary judgment and to dismiss for lack of prosecution. The motions were filed on March 14, 1983, pursuant to Rules 121 and 123, respectively. [1] For convenience we have combined our Findings of Fact and Opinion. *221 In his notice of deficiency dated April 15, 1981, respondent determined deficiencies in petitioners' income tax and additions to the tax as follows: Additions to Tax
Year
Deficiency
Sec. 6653(b)
1978
$1,530.30
$765.15
1979
262,352.90
131,176.45
Petitioners filed a timely petition with this Court stating that they were residents of Bridgeville, Pennsylvania. The petition further stated that respondent's determinations of unreported income were erroneous and that respondent's determinations that underpayments of tax for 1978 and 1979 were subject to the 50 percent fraud addition also were in error. The petition also claims: 5. The petitioners filed their 1978 and 1979 Income Tax Returns on the basis of cash receipts and expenditures, this included increases and decreases in the net worth. 6. The petitioners reported their income correctly on their tax returns based on this approved accounting method. Respondent's answer denied the *222 substantive allegations of the petition and made affirmative allegations to which petitioners did not reply. On December 28, 1982, petitioners were served with respondent's first request for admissions, which contained allegations virtually identical to those in respondent's answer. Petitioners failed to file a response to the requests for admissions. On March 14, 1983, when the case was called for trial, counsel for respondent and petitioner Deborah A. Kelly appeared, but no appearance was made by or on behalf of petitioner Charles J. Kelly. Respondent thereupon conceded that there were no deficiencies due from petitioner Deborah A. Kelly for the years 1978 and 1979 because she was considered to be an innocent spouse under section 6013(e) and that she was not liable for the fraud penalty. With respect to petitioner Charles J. Kelly, however, respondent filed the instant motion to dismiss for lack of prosecution and the motion for partial summary judgment currently before us. We grant respondent's motion to dismiss. Rule 123(b) provides: (b) Dismissal: For failure of a petitioner properly to prosecute or to comply with these Rules or any order of the Court or for other *223 cause which the Court deems sufficient, the Court may dismiss a case at any time and enter a decision against the petitioner. The Court may, for similar reasons, decide against any party any issue as to which he has the burden of proof; and such decision shall be treated as a dismissal for purposes of paragraphs (c) and (d) of this Rule. Determinations in a notice of deficiency are presumed to be correct, and petitioner bears the burden of proving that the deficiencies are invalid. Rule 142(a); Welch v. Helvering,290 U.S. 111 (1933); Habersham-Bey v. Commissioner,78 T.C. 304 (1982). Petitioner has refused to cooperate with respondent's discovery attempts and has failed to attend trial. [2] He has presented no evidence in support of his burden of proof. [3] Accordingly, we grant respondent's motion to dismiss. See Doncaster v. Commissioner,77 T.C. 334 (1981). Decision will be entered for the respondent in the amount of deficiencies in petitioner Charles J. Kelly's income tax for 1978 and 1979. The Court determines pursuant to respondent's concessions that no deficiencies are due from petitioner Deborah A. Kelly for those years. *224 *225 Respondent also asks this Court for a summary adjudication on the issue of whether petitioner Charles J. Kelly is liable for the imposition of the addition to tax for fraud under section 6653(b). Summary judgment is appropriate where there is no genuine issue as to any material fact and a decision may be rendered as a matter of law. Rule 121(b). [4]
Fraud for purposes of section 6653(b) is an intentional wrongdoing on the part of a taxpayer with the specific purpose of evading a tax known or believed to be owing. Stoltzfus v. United States,398 F.2d 1002, 1004 (3rd Cir. 1968), cert. denied 393 U.S. 1020 (1969); Webb v. Commissioner,394 F.2d 366 (5th Cir. 1968), affg. *226 a Memorandum Opinion of this Court; Habersham-Bey v. Commissioner,supra at 311. Respondent has the burden of proof as to fraud, and he must carry that burden by clear and convincing evidence. Section 7454(a); Rule 142(b); Habersham-Bey v. Commissioner,supra at 311. Fraud is never presumed, but must be established by affirmative evidence. Beaver v. Commissioner,55 T.C. 85 (1970). However, respondent may prove fraudulent intent by means of circumstantial evidence where direct evidence is unavailable, as well as on the basis of facts deemed admitted pursuant to the rules of this Court. Doncaster v. Commissioner,supra at 338; Gilday v. Commissioner,62 T.C. 260 (1974); Otsuki v. Commissioner,53 T.C. 96, 105 (1969). In this case respondent served requests for admission upon petitioner who failed to respond. The facts contained therein have been deemed admitted pursuant to Rule 90(c). The deemed admissions provide essentially as follows: Between 1974 and 1979, petitioner was arrested on five occasions for pool selling and bookmaking and was tried and convicted after *227 four of those arrests. Petitioner pled guilty after the fifth. In the course of three of these arrests made pursuant to search warrants, the arresting officers retrieved pieces of paper containing sports wagers that had been placed with petitioner on various football, baseball and basketball contests. On two of these occasions, upon entry the arresting officers observed petitioner placing sports wagers into a wastebasket or attempting to flush sports wagers down a toilet. The arresting officers in the course of two of these arrests remained on the premises after entry and received telephone calls from unknown persons attempting to place bets with petitioner on sports contests. The arresting officers on December 11, 1977, confiscated from petitioner's premises a total of $46,606 in sports wagers for football games to be played during that week. On May 7, 1978, the arresting officers over petitioner's telephones took $979 in bets which had been placed on sports contests. On December 16, 1979, the arresting officers confiscated from petitioner $317,708 in wagers that were current for that day. Based upon these confiscations, respondent made reasonable projections as to the amounts *228 of wagers petitioner collected during certain periods of sports activity. Respondent projected wagers for the first week in January 1978--corresponding to the National Football League divisional playoffs--based upon wagers confiscated in the arrest of December 11, 1977. Another five-week projection was made to coincide with games played at the end of the baseball and basketball seasons during 1978, based upon confiscations made in the arrest of May 7, 1978. Projections for 1979 were made for the entire football season of the NFL, based upon wagers confiscated in the arrest of December 16, 1979. A 10 percent net profit factor then was applied by respondent to these projected amounts to determine petitioner's net profit from bookmaking. Respondent determined that petitioner had omitted $5,150.10 and $540,103.60 from income tax in 1978 and 1979, respectively, resulting in understatements of income tax of $1,530.30 and $263,252.90. On his income tax returns for 1978 and 1979, petitioner included in gross income amounts received as wages from his position as a bar manager in a bar/restaurant, but he did not report any wagering income. Nor did he record his wagering income on his *229 books and records. He also failed to produce information concerning wagering income to respondent in connection with the examination of his 1978 and 1979 returns. Petitioner's omissions from income, understatements of tax, failure to record wagering income and failure to produce records to respondent were fraudulent with intent to evade tax. The facts deemed admitted conclusively show that petitioner engaged in a course of conduct which, when viewed as a whole, demonstrates fraud. See Grosshandler v. Commissioner,75 T.C. 1 (1980); Otsuki v. Commissioner,supra. It is clear that these deemed admitted facts may form the basis for a finding that fraud exists. [5]Doncaster v. Commissioner,supra.
*230 The first indicium of fraud in the deemed admitted facts involves petitioner's participation in (and conviction of) unlawful activities. See Petit v. Commissioner,10 T.C. 1253 (1948). [6] Petitioner was arrested five times for pool selling and bookmaking. He was tried and convicted after four of these arrests and pled guilty after the fifth. We find that the atmosphere surrounding petitioner's illegal activities, when viewed in conjunction with all the other evidence of fraud in this case, [7] indicates fraud. *231 The second indicium of fraud in the deemed admitted facts consisted of petitioner's attempts to conceal evidence of unreported income. See United States v. Eley,314 F.2d 127 (7th Cir. 1963); Grosshandler v. Commissioner,supra.On documented occasions, petitioner was seen attempting to dispose of pieces of paper containing sports wagers by throwing them into a waste-basket or flushing them down the toilet. Given petitioner's pattern of behavior in this case, we conclude that his intent in attempting to dispose of evidence of his wagering activities was at least in part to conceal evidence of income received, and that this was fraudulent intent. [8] Moreover, petitioner failed to record unreported wagering income on his books. See Grosshandler v. Commissioner,supra;Otsuki v. Commissioner,supra.His behavior indicates fraud in that petitioner in doing so attempted to conceal his receipt of income. *232 Third, the facts deemed admitted show that petitioner failed to produce records or other information concerning his wagering income to respondent in connection with the examination of his income tax returns for the taxable years 1978 and 1979. Failure to cooperate with respondent's agents on audit to avoid payment of tax liabilities is an indicium of fraud. Grosshandler v. Commissioner,supra.
Finally--and most significantly--we find petitioner's substantial underreporting of his income to be indicative of fraud. While a mere understatement of income does not conclusively establish fraud, Otsuki v. Commissioner,supra at 106, repeated and substantial understatements of income are evidence from which fraud may be inferred. Holland v. United States,348 U.S. 121 (1954); Marinzulich v. Commissioner,31 T.C. 487 (1958); Bilsky v. Commissioner,31 T.C. 35 (1958). The evidence here indicates that petitioner's unreported wagering income for 1978 as reconstructed by respondent was $5,150.10. The corresponding amount for 1979 was $540,103.60. These understatements are substantial and, when *233 taken in conjunction with the other evidence, indicative of fraud. There being no material fact in issue, we conclude that summary judgment is appropriate and that petitioner Charles J. Kelly is liable for the imposition of the addition to tax under section 6653(b). An appropriate order and decision will be entered.
Footnotes
1. All Rule references are to the Tax Court Rules of Practice and Procedure, and all section references are to the Internal Revenue Code of 1954, as amended and in effect for the taxable years in issue.↩
2. Rule 149 provides in pertinent part: (a) Attendance at Trials: The unexcused absence of a party or his counsel when a case is called for trial will not be ground for delay. The case may be dismissed for failure properly to prosecute, or the trial may proceed and the case be regarded as submitted on the part of the absent party or parties. (b) Failure of Proof: Failure to produce evidence, in support of an issue of fact as to which a party has the burden of proof and which has not een conceded by his adversary, may be ground for dismissal or for determination of the affected issue against that party. * * * ↩
3. We note that the burden of proof will be on respondent where he raises a new issue in his answer. See Rule 142(a); Turner v. Commissioner,68 T.C. 48 (1977). Respondent's answer here, however, contained allegations which described the factual basis for respondent's reconstruction of petitioner's income as set forth in the statutory notice and does not raise a new issue. The method used by respondent here--the gross profit method--has been used before in cases concerning virtually identical facts. See Grasavage v. Commissioner,T.C. Memo. 1979-89; Mitchell v. Commissioner,T.C. Memo. 1968-137, affd. 416 F.2d 101 (7th Cir. 1969), cert. denied 396 U.S. 1060 (1970); Shades Ridge Holding Co. v. Commissioner,T.C. Memo. 1964-275, affd. per curiam sub nom. Fiorella v. Commissioner,361 F.2d 326↩ (5th Cir. 1966).
4. See also Rule 121(d), which provides in pertinent part: * * * When a motion for summary judgment is made and supported as provided in this Rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this Rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, a decision, if appropriate, may be entered against him.↩
5. In Doncaster v. Commissioner,77 T.C. 334 (1981), respondent in his answer made affirmative allegations to which petitioner did not reply. Upon respondent's motion, the allegations were deemed admitted, and, after petitioner's failure to appear at trial, respondent chose to rely solely upon the deemed admissions to carry his burden of proof of fraud. We held that respondent did not have to present affirmative evidence of fraud, independent of the deemed admissions. Cf. Rechtzigel v. Commissioner,79 T.C. 132 (1982), affd. per curiam 703 F.2d 1063↩ (8th Cir. 1983).
6. Accord, Banks v. Commissioner,T.C. Memo. 1961-237 (petitioner's illicit gambling business constituted "badge of fraud"); Baum v. Commissioner,T.C. Memo. 1958-96, affd. 271 F.2d 266 (3d Cir. 1959) (illegal gambling business indicated fraud); Meller v. Commissioner,T.C. Memo. 1957-18↩ ("general atmosphere" surrounding petitioner's illegal activities, along with admissions of guilt of bribery, indicated fraud). 7. We note that we have held this fact, standing alone, to be insufficient to prove fraud. See Green v. Commissioner,66 T.C. 538↩ (1976). However, illegal activity does not stand alone here, as petitioner has exhibited fraudulent intent in several additional respects.
8. In Shades Ridge Holding Co. v. Commissioner,supra, we found that efforts to conceal unlawful activities and income by a lottery operator indicated fraud in that they evidenced "a motive to operate outside the law, whether it be the local criminal laws or the Federal tax laws." 23 T.C.M. 1665↩, 1677, 1964 P-H Memo. T.C. par. 64,275 (1964).